IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ENOCH W. PARRY, III,

    Plaintiff,                         14cv1115
                                              **ELECTRONICALLY FILED**

       v.

NEW DOMINION CONSTRUCTION,
INC., MICHAEL PASCUZZI, AND
NICHOLAS PASCUZZI, III,

    Defendants.

## Memorandum Opinion on Motions for Summary Judgment

**I.    Introduction**

This is an action brought pursuant to the Fair Labor Standards Act ("FLSA") of 1938.[1] Plaintiff alleges that he is entitled to overtime compensation under the FLSA, the Pennsylvania Minimum Wage Act of 1968, and the Pennsylvania Wage Payment and Collection Law. He seeks to recover lost wages, including overtime pay for time he allegedly worked in excess of 40 hours per week, pre- and post-judgment interest, liquidated damages, costs, compensatory and punitive damages, and attorneys' fees. Defendants, New Dominion Construction et al. (New Dominion) have filed Counterclaims alleging negligent "Damage to Equipment" and for "Recoupment of Overcompensation." Defendants have filed a Motion for Summary Judgment (doc. no. 19), with supporting documents, arguing primarily that Plaintiff's claims fail as a matter of law because he was an "exempt" employee under federal and state laws who maintained a managerial position with Defendants. Plaintiff/Counterclaim Defendant has filed a Motion for Partial Summary Judgment with supporting documentation, and a Motion to

---

[1] This action was originally commenced in the Court of Common Pleas of Washington County, Pennsylvania, but was properly removed by Defendants pursuant to 28 U.S.C. § 1331.

Amend his Complaint (doc. no. 23) arguing that Defendants' Counterclaim for recoupment of overpayment is baseless and was asserted in retaliation for filing this lawsuit, Defendants' Counterclaim for damage to equipment was brought for the improper purpose of retaliation against Plaintiff, and that leave shall be given to file an amended FLSA Retaliation Claim addressing Defendants' Counterclaims. After careful consideration, this Court will GRANT Defendants' Motion for Summary Judgment (on all but Retaliation Claims), will DENY Plaintiff's Motion for Partial Summary Judgment on the Retaliation Claim, and will GRANT Plaintiff leave to Amend his Complaint to allege that the Counterclaim was filed in retaliation of Plaintiff exercising his rights under the FLSA.

## II. Facts

Although the parties have amassed approximately 60 pages of concise factual narrative, the Court has attempted to glean only the pertinent material facts. Unless otherwise noted, the following facts are not in dispute. See Doc. Nos. 34, 44, 47 and 48. New Dominion is a family owned and operated construction business specializing in landfill, heavy earth-moving construction, and subcontracted labor to oil and gas companies. Doc. No. 44 at ¶ 1. Brothers and co-defendants, Nicholas Pascuzzi, III and Michael Pascuzzi oversee the company's operations on a daily basis. The brothers Pascuzzi and their father, Nicholas Pascuzzi serve as the Officers of New Dominion and each own a one-third share of the company's stock. Id. at ¶ 2.

New Dominion compensates its construction managers and supervisors with a salaried compensation structure that is not weather dependent, and provides other benefits not afforded to hourly employees, including a company vehicle and health-care benefits. Construction managers who are salaried are paid the same salary whether they work more or less than 40

hours per week. New Dominion, however, pays its hourly employees including laborers, equipment operators, and truck drivers for only the hours that they actually work at set rates and time and a half for overtime.

When Plaintiff originally sought a position with New Dominion as a project manager (in October 2011), it was the highest position available below the company's owners and officers. Ultimately, Plaintiff applied for and agreed to work in the lower construction management position of foreman, and New Dominion offered its "salaried compensation package," which he accepted. As a foreman, Plaintiff reported directly to a superintendent. The parties dispute whether foreman such as Plaintiff primarily manage or take exclusive direction from superintendents. Doc. No. 48 at ¶ 9.

The Daily Job Reports of New Dominion (which were the company's record of how employees and equipment were deployed on its construction projects) showed that Plaintiff was listed as a foreman on 329 of the 351 Daily Job Reports (93.7 % of the time). Id. at ¶ 35. Plaintiff contends that while the Daily Reports listed him as a foreman, the Reports do not reflect his job duties or assignments. Also, the Daily Reports are prepared by foreman, but are compiled by superintendents at least in part. Doc. No. 47 at ¶ 14. Plaintiff was issued a Purchase Order book and he made at least one purchase on behalf of New Dominion during his employment, but Plaintiff argues that he did not have authority to purchase things without direction from a superintendent. Doc. No. 48 at ¶ 38. Plaintiff conducted at least one weekly safety meeting, although Plaintiff claims the superintendent would have asked him to conduct the meeting. Id. at ¶ 39.

During and after his one and a half year employment with New Dominion, Plaintiff prepared a written description of his work experience at New Dominion (on his LinkedIn profile

and resume) and represented himself as a "construction supervisor," "assistant superintendent," and "lead supervisor," although Plaintiff argues that his job experience at New Dominion was not commensurate with those titles. Id. at ¶ 44. Plaintiff also testified during a Workers Compensation proceeding that he was a "foreman, supervisor." Doc. No. 44 at ¶ 13. Plaintiff described himself as a working foreman, who reported to a superintendent. Doc. No. 48. at ¶¶ 9 and 11.

On March 8, 2013, his fifth day on a work assignment at Godwin Pump Project, a supervisor at New Dominion's client, Godwin, instructed New Dominion to remove Plaintiff from the project. Plaintiff agrees that he was told to leave, but it also was the same day he allegedly complained to a Godwin supervisor that he was a salaried employee working well in excess of 50 hours per week doing laborer tasks. After a several week layoff, New Dominion assigned Plaintiff to a crushing operation in Imperial, Pennsylvania known as the BFI project, where Plaintiff worked for approximately two weeks (April 15, 2013 through April 29, 2013). Doc. No. 44 at ¶¶ 55-56.

On April 29, 2013, within approximately 20 minutes after Plaintiff caused a collision damaging a loader owned by New Dominion, Nicholas Pascuzzi, III terminated Plaintiff's employment while Mr. Pascuzzi was on site. Id. at ¶ 57. The basis for Plaintiff's discharge, according to Mr. Pascuzzi, was that Plaintiff had been a poor construction manager, had been caught and removed by New Dominion's client from a job for leaving the job site without authorization, and had caused damage to New Dominion's construction equipment. Five months after Plaintiff was terminated, on October 10, 2013, via a counseled demand letter, Plaintiff then complained to New Dominion over not receiving overtime compensation. Plaintiff testified that he has "no idea" of whether Mr. Pascuzzi had heard of any alleged

complaint of Plaintiff regarding overtime before he was terminated, but the same day he complained about overtime to the supervisor at Godwin Pumps Project, Michael Pascuzzi told him "he did not expect [Plaintiff] to cause trouble." Id. at ¶ 65.

Defendants filed Counterclaims against Plaintiff and after Plaintiff filed this lawsuit, New Dominion sought the repair estimate for the damage to the loader. Doc. No. 48 at ¶ 27-28. The amount of the repair estimate was approximately $12,469.10. Prior to Plaintiff filing this lawsuit, New Dominion never had asserted a claim for damages or set off against any employee nor required an employee to pay for damages. Doc. No. 48 at ¶ 31. Michael Pascuzzi however testified that going forward, the policy will be "if you make a mistake and bang up my equipment, you are going to start to pay for it." Doc. No. 48 at ¶ 30. Another New Dominion employee, Keith Diamond, damaged a company truck in a DUI accident and was not required to pay for damage to the truck, although Defendants contend that he lost benefits/compensation. Doc. No. 48 at ¶ 32.

### III. Summary Judgment Standards

"Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting

*Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."), citing *Anderson* and *Celotex Corp.* In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV. Discussion

### Counts I and III – FLSA Claim and State Law Claim[2]

Plaintiff alleges that Defendants violated both the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA) by failing to pay him overtime compensation in addition to his weekly salary. Defendants have filed a Motion for Summary Judgment arguing that Plaintiff's status as an exempt employee under applicable federal and state laws creates no genuine issue of material fact as to whether Defendants properly and fully compensated Plaintiff. The undisputed material facts establish as a matter of law that Plaintiff's

---

[2] The exemptions under the FLSA are identical and if Plaintiff is an exempt employee under the FLSA, he is also an exempt employee under the PMWA.

6

employment with Defendants was primarily managerial in nature, and therefore, he is exempt from overtime compensation.

Under the FLSA, employees must be paid not less than a minimum wage for all hours worked and overtime premium pay for all hours worked over 40 hours in a workweek. 29 U.S.C. § 206(a)(1). However, "any employee employed in a bona fide executive, administrative, or professional capacity," is not subject to overtime compensation. 29 U.S.C. § 213(a)(1).

Under § 541.100 of Title 29 of the Code of Federal Regulations, the term "employee employed in a bona fide executive capacity," shall mean any employee:

(1) Compensated on a salary basis as a rate of not less than $455 per week, exclusive of board, lodging or other facilities;

(2) Whose "primary duty"[3] is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who "customarily and regularly"[4] directs the work of two or more other employees; and,

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

---

[3] 29 C.F.R. § 541.700 defines "primary duty" as "principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Numerous factors may be considered including the relative importance of the exempt duties compared to other types of duties, the amount of time performing exempt work, the employee's relative freedom from direct supervision and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

[4] 29 C.F.R. § 541.701 defines the phrase "customarily and regularly" to mean " a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweekl; it does not include isolated or one-time tasks.

The Court is mindful that it is the capacity in which the employee works which determines whether the employee is exempt from the overtime requirements of the FLSA and not the employee's capabilities or experience for some other type of work. *Craig v. Far West Engineering Co.,* 265 F.2d 251 (9th Cir. 1959). The Court is required to look to the actual duties the employee performs and the circumstances of the employment as a whole. The Court also notes that the title given to an employee is not conclusive. *Walling v. Moore Milling Co.,* 62 F.Supp. 378 (W.D. Va. 1945).

Plaintiff's salary was $850 per week, which was then raised to $925 per week, and thus his salary was far in excess of the qualifying amount of $455 per week under the first requirement listed above. The second requirement, that Plaintiff's "primary duty" is management of the enterprise, is established by the following undisputed material facts of record: Plaintiff's own description of his work as a construction supervisor, and, Daily Job Reports listing Plaintiff as being present on the New Dominion job as a foreman 93.7 % of the time. The Daily Job Reports, which Plaintiff was required to prepare and sign on a Daily basis, listed Plaintiff as a foreman. The Daily Reports also listed each employee, his position, hours worked, and progress made or delays incurred. Although Plaintiff was a "working foreman" the primary duty (principal, main, major, or most important duty) of his work was to act in a supervisory capacity.

During 16 of Plaintiff's 18 months on the job at New Dominion, he spent his time on three major construction projects: seven months on a project in Quehanna, Pennsylvania, three months on a project in Painted Post, New York, and six months on a project in Fauquier County, Virginia. On resumes that Plaintiff submitted to prospective employers both before and after termination of his employment with New Dominion, his "Accomplishments" were listed

as follows: assistant superintendent for 10.5 acre landfill cap and 2 acre sediment pond construction (Painted Post project), lead supervisor for construction of three 10 million gallon fresh water impoundments (Quehanna project), and lead supervisor for a 6.5 acre landfill cell construction (Warrenton project). Each of the three projects had a field staff including a superintendent, several foreman and numerous hourly employees including laborers, equipment operators, and truck drivers. At any given time, field staff at the Quehanna project was approximately 30 to 40 New Dominion employees, 25 to 30 of which were hourly employees. The Daily Job Reports completed by Plaintiff show that Plaintiff, as a foreman, had crews of at least two and sometimes as many as 10 to 15 hourly laborers, operators, and truck drivers. With respect then, to the third requirement under § 541.100, there is no material dispute that Plaintiff "customarily and regularly" supervised and directed at least two other employees.

Finally, with respect to the fourth requirement that Plaintiff had the authority to hire or fire employees or have suggestions regarding the same, the foreman at New Dominion are charged with making the initial recommendation regarding whether an hourly employee within a particular foreman's crew should receive a requested increase in pay or promotion. Foreman are required to discipline and terminate employees for safety violations although they may not regularly do so. According to the affidavit of Michael Pascuzzi, salaried employees of New Dominion are managers of a crew who have the authority to hire and fire employees, and foreman at New Dominion have both hired and fired hourly employees. Additionally, according to the affidavit of Michael Pascuzzi, Section 17 of the 2011 Edition of the New Dominion Construction Safety Manual gives New Dominion managers, which includes project foreman, both the authority and obligation to discipline and under certain circumstances, immediately terminated employees for safety violations. Doc. No. 22-4. Although Plaintiff tries to create a

genuine issue of material fact by stating that he (and another foreman) did not actually hire or fire employees, that does not mean that he and other foreman did not have input in those decisions or that they did not have the authority to do so. Accordingly, the fourth requirement of an exempt employee is met.

### Count II – Retaliation Claim(s)

The Fair Labor Standards Act (FLSA) contains an anti-retaliation provision that makes it unlawful to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted any proceeding. 29 U.S.C § 215(a)(3).

In order to set forth a prima facie case for retaliation, a plaintiff must show: that he/she engaged in activity protected by the FLSA; (2) he/she suffered a materially adverse action that might dissuade a reasonable worker from making or supporting an FLSA; (3) a causal connection between protected activity and the adverse action. *See Burlington Northern & Sante Fe Ry. Co. v. White,* 548 U.S. 53 (2006); *Wildi v. Alle-Kiski Med. Ctr.*, 659 F.Supp. 2d 640, 664 (W.D. Pa. 2009). The appropriate framework for analyzing claims of unlawful retaliation under the FLSA is the familiar *McDonnell Douglas* burden-shifting framework. *Wildi. citing,* 29 U.S.C.A. § 215(a)(3).

If an FLSA Plaintiff alleging retaliation can prevail on his or her prima facie case, then burden shifts to the employer to establish a legitimate, non-retaliatory reason for adverse employment action. If this burden of production is met, then burden shifts back to plaintiff to prove that alleged reasons proffered by employer was pretextual and that employer intentionally retaliated against plaintiff. Fair Labor Standards Act of 1938, § 15(a)(3), 29 U.S.C.A. § 215(a)(3).

Judging the facts in the light most favorable to Plaintiff, he alleges on his fifth day of working on the Godwin pumps in West Virginia, on March 8, 2013, he complained to a Godwin supervisor about not receiving overtime compensation, and a few hours later, Plaintiff was told to leave the Godwin pumps job site and return to New Dominion offices for leaving without authorization. Plaintiff alleges that upon his return to the home officer, co-owner Michael Pascuzzi told him that "he had not expected [Plaintiff] to cause trouble." Plaintiff contends that the alleged complaint to a supervisor of New Dominion's client caused New Dominion to temporarily lay off Plaintiff and terminate his employment a month and a half later.

The above facts are sufficient to set forth a prima facie case for retaliation. Applying the *McDonnell Douglas* analysis, the Court finds (for sake of argument) that New Dominion has set forth a legitimate non-retaliatory reason for Plaintiff's termination/discipline - - that he caused damage to company owned property/left the worksite without permission. After shifting the burden back to the Plaintiff to set forth facts which could establish that the alleged reasons for his layoff/termination were pretextual and that Defendants retaliated against Plaintiff, the Court finds that, for purposes of summary judgment, Plaintiff has met his burden of showing that the alleged reasons for his discipline/termination and (the subsequent Counterclaim against Plaintiff discussed below) were lodged in retaliation for Plaintiff's engaging in protected activity (complaining to his supervisor of working overtime, or in the context of the filing of a civil complaint).

**Motion to Amend**

In Plaintiff's Motion for Partial Summary Judgment, he also seeks to Amend his Complaint to allege that Defendants retaliated against Plaintiff in filing its Counterclaim against Plaintiff. According to Plaintiff, at a discovery deposition conducted approximately 8 days

11

prior to the filing of the within Motion, Defendant Michael Pascuzzi testified under oath that New Dominion's Counterclaims in this action were filed to retaliate against Plaintiff for asserting his FLSA rights against Defendant. According to Plaintiff, at his 30(b)(6) deposition, Michael Pascuzzi testified that while it was company policy not to seek payment from employees for damages done to company property, they chose to seek recoupment, "As I figured since, Duffy, Mr. Parry, deemed it to be minor damage [in his Complaint], then he would not mind paying for it." Id. at ¶ 30. Plaintiff seeks leave to amend his Complaint to add these allegations. Defendants object to said request on the basis that it is untimely, and that it had a reasonable basis in law and fact to file the Counterclaim against Plaintiff.

Courts have found an employer in violation of the FLSA's anti-retaliation provision if it files a claim (or in this case, a counterclaim) against an employee for a retaliatory motive *and* without a reasonable basis in fact or law. *Zebroski v. Gouak*, 2010 WL 1348400, * 1 (E.D. Pa. 2010) *citing Darveau v. Detecon*, 515 F.3d 334, 343 (4th Cir. 2008); *Phillips v. M.I. Quality Lawn Maintenance, Inc.* 2010 WL 4237619 (S.D. Fla. 2010).

However, Defendants contend that it had a reasonable basis to bring the Counterclaim and that it was not frivolous. In support thereof, Defendants cite *Ergo v. Int'l Merch. Servs. Inc*, 519 F.Supp.2d 765, 781 (N.D. Ill. 2007), for the position that the filing of a Compulsory Counterclaim may only be found to be retaliatory where it is frivolous.

Neither party cites *Nesselrotte v. Allegheny Energy*, 2007 WL 3147038 (W.D. Pa. 2007), an instructive (unreported) opinion, which is directly on point, by the Honorable Nora Barry Fischer, in which *Ergo* was discussed and handily dismissed in light of the Supreme Court precedent in *Burlington Northern & Sante Fe RY v. White*, 126 S.Ct. 2405, 2412 (U.S. 2006).[5]

---

[5] In *Burlington Northern*, the United States Supreme Court held that anti-retaliation provisions of Title VII does not confine actions and harms it forbids to those that are related to employment or occur at the

*See also, Spencer v. International Shoppes, Inc,* 902 F.Supp.2d 287 (E.D. NY September 28, 2012).

After analyzing both *Ergo* and the effect of *Burlington Northern*, Judge Fischer permitted a Plaintiff to amend a complaint to add a claim for retaliation to go forward under a similar scenario as here - - Plaintiff was attempting to allege that the filing of a counterclaim in that case constitutes an adverse action for purposes of the retaliation provisions (albeit under Title VII).

Judge Fischer, discussing *Ergo*, stated the following which bears repeating:

> While the case law [Ergo] cited by Defendants provides for a colorable argument as to whether the filing of a counterclaim may serve as the basis for a retaliation claim under Title VII, considering the Supreme Court's expansive interpretation of retaliation under Title VII in *Burlington Northern*, i.e., whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern*, 126 S.Ct. at 2415 (citations and internal quotations omitted), as well as the liberal standard applied to a motion to amend under Rule 15(a), the Court cannot say, at this time and based on the record before it, that Plaintiff's proposed claim for retaliation is futile. Accordingly, the Court will allow said amendment.
>
> Furthermore, while *Ergo* is persuasive (to some extent), Defendants' argument pays short shrift to the language in Burlington Northern as to the applicable standard. There, in rationalizing its decision to implement an objective, reasonable employee standard, the Supreme Court left room for disagreement, explaining "[w]e phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." Burlington Northern, 126 S.Ct. at 2415. The Court further elaborated that "[b]y focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." Id., at 2416.

---

workplace, rather the actions of the employer must be harmful to the point that "they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id* at. 2408-2409.

> FN25. With the exception of *Ergo*, cited and relied upon by Defendants, the Court has only found two other post- Burlington Northern cases to address a counterclaim as a basis for a retaliation claim. See *Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106, 1123 (10th Cir.2007) ( "While it is certainly an interesting question whether the filing of counterclaims in response to discrimination claims brought by a former employee constitutes an adverse employment action, that question, along with the disputed causation issue, need not be decided in this case"); *Walsh v. Irvin Stern's Costumes, Civil Action No*. 05-2515, 2006 WL 2380379, at *1 (E.D.Pa. Aug. 15.2006) (allowing plaintiff-employee's retaliation claim based on defendant-employer's letter threatening to file criminal charges unless plaintiff withdraw her discrimination claims was sufficient to survive a motion to dismiss). While the *Walsh* case is distinguishable on its egregious facts, the Court finds that it nevertheless provides some instruction. There, the Court stated that "we are convinced that 'a reasonable employee facing the choice between [facing criminal charges and continuing to press her] discrimination complaint might well choose the former.' " Id., at *9 (quoting *Burlington Northern,* 126 S.Ct. at 2418) (alteration in original). Likewise, the Court opines that when faced with counterclaims such as the ones at issue here, which directly attack the integrity of the plaintiff as well as her professional standing as an attorney, "a reasonable employee facing the choice between [enduring said counterclaims and continuing to press her] discrimination complaint might well choose the former." *Burlington Northern*, 126 S.Ct. at 2418 (emphasis added).

Applying *Burlington Northern*, the Court will permit the amendment to allege retaliation under the facts of this case.[6] The deposition testimony of Michael Pascuzzi tends to "put a point on" the factual statement that the Counterclaim was filed with a retaliatory motive for Plaintiff engaging in protected activity. In other words, the filing of a Counterclaim, thus subjecting Plaintiff to potential monetary damages, could "well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern,* at 2408-2409.

Fed. R. Civ. Pr. Rule 15(a)(2) provides that a party may amend its pleadings with the written consent of the opposition, or leave of Court. While motions for leave to amend are to be

---

[6] Even applying *Ergo* for sake of argument, while this Court finds that while there arguably was a "basis in law" to bring the Counterclaim, the facts as set forth during the deposition of the 30(b)(6) witness, that it was not the company policy to seek payment for damages caused to New Dominion property, but that they sought to collect it from Plaintiff after he filed a lawsuit, create a genuine issue of material fact regarding whether there was a "reasonable basis in fact" for seeking repayment

14

liberally granted, "grounds that could justify a denial of leave [include] undue delay, bad faith, dilatory motive, [and] prejudice." *General Refractories, Co. v. Firemen's Fund Insurance Co.*, 337 F.3d 297, 309 (3d Cir. 2003)(quoting *Shane v. Fauver*, 213 F.3d 113, 115-16 (3d Cir. 2000)). While it is true that Plaintiff was aware of the existence of the Counterclaim for several months, it was not until the discovery deposition of the Rule 30(b)(6) witness that factual testimony tending to support a claim that retaliation was unearthed. Accordingly, the Court cannot find that Plaintiff's unduly delayed in bringing these allegations of retaliation.

This Court will follow the lead of Judge Fischer in *Nesselrotte*, 2007 WL 3147038, and will GRANT Plaintiff's Motion for Leave to Amend his Complaint to add allegations of Retaliation relating to evidence he obtained during the deposition of Michael Pascuzzi regarding the filing of the Counterclaim against Plaintiff.

In light thereof, Plaintiff's Amended Complaint shall be filed by February 11, 2015, and this Court will conduct a status/settlement conference on February 17, 2015, to commence at 9:00 a.m. Although Plaintiff has attached a proposed Amended Complaint adding retaliation allegations to existing Count II, the Court will order that Plaintiff add a separate and distinct count for retaliation in his Amended Complaint. At said status conference, both Plaintiff and the President of Defendants and any named party shall personally attend said conference. In addition to conducting settlement discussions, the Court will set forth a new scheduling order with revised trial dates and deadlines after permitting an opportunity to conduct limited discovery thereon.[7]

---

[7] Although not filed as a pleading as of yet, the facts as set forth in Plaintiff's Motion to Amend establish a genuine dispute of material fact with regard to Plaintiff's claims for retaliation in the filing of the Counterclaim. Although the Court will permit additional limited discovery thereon, at this juncture, the Court will deny Plaintiff's Motion for Partial Summary Judgment. For the same reasons, the Court will also deny Plaintiff's Motion for Partial Summary Judgment on the Counterclaim for "recoupment" of alleged overpayment.

15

### Count IV – Wage Payment and Collection Law (WPCL)

Under Pennsylvania law, "the Wage Payment and Collection Law [WPCL] provides employees with a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.*, 699 A.2d 148, 150 (Pa. 1997). The WPCL provides a statutory remedy when an employer breaches a contractual obligation to pay earned wages, but it does not create a right to compensation. *Donaldson v. Informatica Corp.*, 2009 WL 4348819 (citing *DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)). Here, the undisputed facts evidence that Plaintiff agreed to accept a salary of $850 per week, plus certain benefits provided to salaried employees in exchange for working as a foreman and construction supervisor. He also agreed to a raise to $925 per week. As a matter of law, this Court finds that New Dominion has met its contractual obligations to pay Plaintiff by paying his agreed upon salary. He has no right, therefore, to additional compensation under the WPCL.

### V.     Conclusion

Judging the facts in the light most favorable to Plaintiff, the record evidence as a whole demonstrates that Plaintiff was exempt from the overtime requirements due to his status as a bona fide executive because he met the four (4) criteria for being classified as an executive under 29 C.F.R. § 541.100(a). However, despite his status as an executive, his claim(s) for retaliation remain. Plaintiff has set forth facts that he was disciplined/terminated/and a Counterclaim was brought against him in retaliation for him engaging in protected activity.

Plaintiff's Amended Complaint setting forth a separate and distinct claim for retaliation shall be filed by February 11, 2015, and this Court will conduct a status/settlement conference on February 17, 2015, to commence at 9:00 a.m. Both Plaintiff and the President of Defendants and any named parties (and lead trial counsel) shall personally attend said conference.

In addition to conducting settlement discussions, the Court will set forth a new scheduling order with revised trial dates and deadlines after permitting an opportunity to conduct limited discovery thereon. An appropriate Order follows.

**SO ORDERED** this 10th day of February, 2015.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: All Registered ECF Counsel and Parties